# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | |
| | ) | Case No. 09 C 0332-3 |
| HECTOR URIARTE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

During trial, the government introduced evidence of Hector Uriarte's ("Uriarte's") expenditures as evidence of his participation in a drug and racketeering conspiracy which spanned 1996-2009. The court admitted the evidence over Uriarte's objection based on the government's representations that it would present tax returns to show that Uriarte's wealth was not derived from legitimate means. (Tr. 3784-85, 3852-53.) However, the government never presented the tax returns.

Uriarte was found guilty by a jury of counts 1, 4, 5, 7, 8, 10, 11, 12 and 13 of the Third Superseding Indictment. He moved for a judgment of acquittal or a new trial on numerous grounds. The court denied Uriarte's motions, reserving ruling on the issue of unexplained wealth and ordering supplemental briefing. (Minute Entry as to Hector Uriarte entered October 26, 2012 at 2, ECF No. 1061.) Uriarte objects to both the admission of the evidence and the government's discussion of that evidence in closing statements. Now having received briefing on the issue of unexplained wealth, the court denies Uriarte's motions.

## I. Background Facts

The government presented considerable evidence of Uriarte's expenditures during the period of the conspiracy. By way of example, the government presented evidence that Uriarte loaned Gary and David Martin at least $150,000 in March 2007, of which at least $50,000 was cash. (Tr. 4061, 4076, 4083-84, 4087.) Uriarte purchased three new luxury cars in 2007. In August 2007, he purchased a $100,000 2008 Mercedes Benz CL Class, by putting $9,000 down, trading in a 2007 Mercedes Benz S55, and obtaining financing of just over $60,000. (Tr. 3975-76.) In December 2007, he purchased a $62,777 2008 Cadillac Escalade, putting $11,000 down and obtaining financing of just over $50,000. (Tr. 3979.) Also in 2007, Uriarte had Roberto Cortez buy a $65,915 Land Rover in Cortez's name, but Uriarte provided the $20,000 cash down payment, and Cortez understood that Uriarte was going to pay the $1,030.14 monthly payments. (Tr. 4045-49.) Around 2004, Uriarte also invested $100,000 in Platinum Motors. (Tr. 2833-34.)[1] Andres Flores, when asked why Uriarte invested in Platinum Motors, testified that around 2006 Uriarte told him "[h]e wanted a legit business where he could be able to use – as a way to purchase and tell people he had a job, a legitimate one." (Tr. 2091-92.) There was uncontroverted evidence that Uriarte did not work at Platinum Motors, at least through late 2005. (Tr. 2833-37, 2842, 2848-49.)

Uriarte made the monthly payments on at least two of the above cars. The record reflects that he made timely $1,245.39 payments on the Mercedes in 2007 and 2008 until May 2008, when he paid off the balance. (Tr. 3976-78.) In 2008, he also made payments on the Cadillac, generally over $1,000 each. (Tr. 3981.) The record is silent as to whether he was also making timely payments on the Land Rover. (Tr. 3975-80.)

---

[1] The government claims that this investment was made in cash (e.g. Gov't's Supplemental Br. Resp. Def. Hector Uriarte's Post-Trial Mots. at 4), but the record clearly indicates the investment was by check. (Tr. 2848.)

In opening statement, Uriarte's counsel stated that the evidence would show that Uriarte worked as a roofer and started a landscape business. (Tr. 63, 65.) There was never any proof of either of these jobs, or indeed of any other lawful employment. Instead, the government proved that Uriarte had repeatedly fabricated evidence of legitimate employment.

From 2005-2007, Uriarte applied for a mortgage, a refinancing of that mortgage, and two car loans. These documents contain inconsistent and false information about Uriarte's income. In the first mortgage application in April 2005, Uriarte claimed to be an owner of Platinum Motors, earning $15,000 per month. (Tr. 4054.) In the March 2006 refinancing documents, he claimed to have been a manager of Platinum Motors for three years. (Tr. 4056-57). To check his employment, the bank made a phone call to Jose Martinez and received a verbal verification that Uriarte had worked for Platinum Motors for five years. (Tr. 4057-58). In the August 2007 application to finance the Mercedes, Uriarte stated that he had been employed at Platinum Motors for five years, earning a gross salary of $10,416 a month. (Tr. 3977.) In the December 2007 application to finance the Cadillac, he listed himself as being employed as a broker by Tripp Lynns Investments for the past two years, with an income of $120,000 (whether this is monthly or yearly is not clear from the transcript). (Tr. 3979-80.) There is no other evidence that Uriarte worked at Tripp Lynns Investments.

During the time period following upon Uriarte's investment in Platinum Motors, Roy Corral, the owner of Platinum Motors, paid Uriarte by check. (Tr. 2837, 2849.) The checks included a percentage on the cars sold and a minimal amount per pay period that Corral and Uriarte agreed upon. *Id.* Eventually Uriarte convinced Corral to pay him with payroll checks, despite the fact that Corral testified that Uriarte did not work at Platinum Motors. (Tr. 2833-4.) The payroll checks

3

started by 2004 and continued at least into mid-2005. (Tr. 2836-37.) The precise dates and amounts paid over that time are not clear from the transcript; however, the jury had copies of the payroll checks because they were admitted as an exhibit. *Id.*

## II. Legal Standard

The Seventh Circuit has laid out a test for whether evidence of unexplained wealth is probative and admissible in drug cases, requiring that each of these elements be met:

> (1) the evidence presented creates an inference that the defendant was involved in drug trafficking; (2) the unexplained wealth was acquired during the period in which the drug crime allegedly occurred; and (3) the government presents other evidence to support the charge, including evidence that the income was not obtained through legitimate means.

*United States v. Carrera*, 259 F.3d 818, 829 (7th Cir. 2001) *citing United States v. Penny*, 60 F.3d 1257, 1263 (7th Cir. 1995). With respect to the third part of the test, *Carrera* requires only that the government present "*some* evidence that the unexplained wealth was not derived from legitimate means." *Carrera*, 259 F.3d at 829 (emphasis added).

## III. Analysis

The court concludes that the government adequately met all three parts of the *Carrera* test. There was sufficient evidence presented to allow an inference that Uriarte was engaged in drug dealing, including evidence of large cash expenditures. As to the second part of the test, Uriarte argues that although the government showed purchases during the conspiracy, it failed to provide specific and articulable proof that the wealth with which Uriarte made these purchases was acquired during the conspiracy. (Def. Hector Uriarte's Br. Issue "Unexplained Wealth" at 4, ECF No. 1070.) Such evidence is not required. If it were, the government would either have to provide a complete accounting of a defendant's assets at the start of the conspiracy, or directly connect the wealth to its

4

illegal source during the conspiracy. Both of these are beyond what *Carrera* requires. Instead, courts look only to when the expenditures were made. They have not required the government to prove when the defendant amassed the dollars with which she or he made the purchases. *See, e.g.*, *Penny*, 60 F.3d at 1263-64.

The element which most concerned the court in this case was the third element: whether there was sufficient evidence that Uriarte's wealth was not acquired by legitimate means. In this case, the court concludes the government met *Carrera's* "some evidence" test by proving, as detailed above, that Uriarte repeatedly made false representations about having a job.

Uriarte argues that the government must present "evidence affirmatively demonstrating the absence of legitimate means." (Def. Hector Uriarte's Br. Issue "Unexplained Wealth" at 5.) While clear evidence of lack of legitimate employment is occasionally present,[2] the court finds nothing in the Seventh Circuit cases suggesting that it is required.[3] There is nothing this court has found which indicates that the government must definitely prove the absence of a legitimate source.[4]

---

[2] *E.g. Harris*, 536 F.3d at 811 (defendant was unemployed); *Carrera*, 259 F.3d at 829 (same); *Crisp*, 435 F.2d at 360 (same); *cf. Penny*, 60 F.3d at 1259-60 (notes without comment that Penny told a witness that he had purchased the assets with proceeds from the sale of drugs, but does not discuss any evidence regarding legitimate means).

[3] Some cases lack any evidence about the defendant's legitimate occupation or lack thereof. *E.g. Penny*, 60 F.3d at 1259-60; *United States v. Towers*, 775 F.2d 184, 187-88 (7th Cir. 1985).

[4] The defense cites *United States v. Smith*, 308 F.3d 726, 737 (7th Cir. 2002), which involves a count for filing false tax returns, where the government presented detailed proof of the defendant's legitimate income and assets. Such evidence appears to be necessary where the defendant is charged with failing to report income and pay the required taxes. *See United States v. Marrinson,* 832 F.2d 1465, 1469-70 (7th Cir. 1987). Because the government must prove the existence of unreported, taxable income beyond a reasonable doubt, the government must generally demonstrate the defendant's opening net worth with reasonable certainty. *Id.*

5

The defense argues that the unexplained wealth evidence, in light of the government's closing argument, amounted to a comment on the defendant's failure to testify and improperly shifted the burden of proof to the defendant. In the government's first closing statement, the government made the following statement about unexplained wealth:

> The other things that corroborate the testimony that you heard from the insiders is the evidence that you've seen and heard about the money, basically the unexplained wealth, the unexplained wealth of Hector Uriarte ..., the hundreds of thousands of dollars ... there just is not other explanation for, no other explanation for the case coming anywhere except for from the crew's activities and their participation in it.

(Tr. 5013.)

References to evidence which is "uncontradicted, undenied, unrebutted, undisputed, etc., will be a violation of the defendant's Fifth Amendment rights if the only person who could have contradicted, denied, rebutted or disputed the government's evidence was the defendant himself." *United States v. Cotnam*, 88 F.3d 487, 497 (7th Cir. 1996) (internal citations and quotations omitted). Here, the reference to unexplained wealth cannot reasonably be treated as comment on Uriarte's choice not to testify because he could have explained the wealth with countless sources of evidence not requiring his testimony. For example, cross-examination of the government's witnesses may have established sources for some cash or checks about which there was evidence. In addition, the defendant himself could have introduced documentary evidence such as payroll records, other employment records or tax records, none of which would have required testimony from the defendant.

The defendant also argues that the government's evidence of and argument concerning "unexplained wealth" impermissibly shifted the burden of proof to the defendant. In this case, the

6

jury was repeatedly told, by the government, by defense counsel and by the court that the burden of proof remained with the government at all times. (*E.g.* Tr. 5025, 5433, 5435.) There is no way this jury could have been confused as to where the burden of proof lay.

### IV. Conclusion

For the reasons stated above, Uriarte's motions for a new trial, judgment of acquittal, and for a mistrial are denied.

ENTER:

_____/s/_____
Joan B. Gottschall
United States District Judge

DATED: November 19, 2012